Ruth C. THOMAS and John W. Thomas d/b/a Tramites Migratorios, Appellants,

v.

The STATE of Texas, Appellee.

No. 13–04–573–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

May 17, 2007.

Mark Heidenheimer, McKinney, for appellants.

Ricardo Madrigal, Amberly D. Dattilo, McAllen, for appellee.

Before Justices HINOJOSA[1], YAÑEZ, and RODRIGUEZ.

## OPINION

Opinion by Justice YAÑEZ.

Appellee, the State of Texas, acting through the Consumer Protection Division of the Attorney General's Office, sued appellants, Ruth C. Thomas and John W. Thomas, d/b/a Tramites Migratorios, for violations of the Notary Public Act ("NPA")[2] and the Deceptive Trade Practices Act ("DTPA").[3] Specifically, the State alleged that by offering immigration services through their business (Tramites Migratorios) to persons who purchased their services, appellants engaged in the unauthorized practice of law. Following a

---

**1.** The Honorable Federico G. Hinojosa, former Justice of this Court, did not participate in this opinion because his term of office expired December 31, 2006. *See* TEX.R.APP. P. 41.1(c).

**2.** *See* TEX. GOV'T CODE ANN. § 406.016 (Vernon 1998).

**3.** *See* TEX. BUS. & COM.CODE ANN. § 17.47 (Vernon Supp.2006).

jury trial, the jury (1) found each appellant had acquired $469,416.50 by means of engaging in an unlawful act or practice; (2) assessed penalties in the amount of $20,000.00 as to each appellant, and (3) awarded attorneys' fees to the State in the amount of $22,000.00 as to each appellant. The trial court rendered judgment in the State's favor, ordered permanent injunctive relief as to each appellant, and ordered restitution, penalties, and attorneys' fees as awarded by the jury. By four issues, appellants contend (1) the trial court erred in admitting evidence of prior misconduct by Ms. Thomas, (2) there is no evidence to support the jury's findings that each appellant acquired $469,416.50 by unlawful means, (3) the trial court erred in ordering restitution without specifically identifying the persons to whom monies were to be paid or the amount due to each recipient, and (4) the court erred in ordering restitution in an amount that includes monies paid earlier than two years prior to the filing of the filing of the State's suit. We affirm.

## Standard of Review and Applicable Law

We address legal-sufficiency challenges as either "no-evidence" or "matter-of-law" issues.[4] We analyze the issue as a "no-evidence" challenge when, as here, the party complaining on appeal did not bear the burden of proof at trial.[5]

In deciding a no-evidence challenge, we determine whether there is evidence that would enable reasonable and fair-minded people to reach the verdict under review.[6] In doing so, we view all the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.[7] We will sustain a legal sufficiency point if the record reveals the following: (a) the complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact.[8] The fact finder is the sole judge of the credibility of the witnesses and the weight to give their testimony.[9]

 The admission and exclusion of evidence is committed to the trial court's sound discretion.[10] We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling.[11] We will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment.[12] When erroneously ad-

4. *Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 183–84 (Tex.App.–Fort Worth 1995, no writ).

5. *Id.*

6. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005).

7. *Id.*

8. *Johnson v. McClintock*, 202 S.W.3d 821, 822 (Tex.App.-Corpus Christi 2006, no pet.) (citing *Keller*, 168 S.W.3d at 810).

9. *Id.* (citing *Keller*, 168 S.W.3d at 819).

10. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995); *Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 315 (Tex.App.-Houston [1st Dist.] 2004, pet. denied); *Moore v. Bank Midwest, N.A.*, 39 S.W.3d 395, 401 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

11. *Drilex Systems v. Flores*, 1 S.W.3d 112, 119 (Tex.1998) (citing *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43, 41 (Tex. 1998)).

12. *See* Tex.R.App. P. 44.1; *City of Brownsville*, 897 S.W.2d at 753; *Malone*, 972 S.W.2d at 43;

mitted evidence is merely cumulative or does not concern a material issue dispositive of the case, the error is harmless.[13] We review the entire record, and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted.[14] Whether erroneous admission is harmful is more a matter of judgment than precise measurement.[15] In making that judgment, a reviewing court may consider the efforts made by counsel to emphasize the erroneous evidence and whether there was contrary evidence that the improperly admitted evidence was calculated to overcome.[16] A trial court abuses its discretion when it acts without regard for any guiding rules or principles.[17]

Texas Rule of Evidence 404(b) provides, in pertinent part:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ..." [18]

■■■ "Other acts" evidence is thus admissible to show a plan or scheme.[19] If extraneous offense evidence is improperly admitted during the State's case-in-chief,

any error may be cured by the defendant's subsequent testimony which "opens the door" to rebuttal.[20]

### Analysis

■■■ By their first issue, appellants contend the trial court erred in admitting evidence of prior misconduct by Ms. Thomas. Specifically, appellants complain of the trial court's admission of Exhibit 14, a letter dated October 14, 1993, from the Executive Director of Shiloh Center for Human Development, Inc. to Ms. Thomas.[21] Ms. Thomas testified that she worked at the Shiloh Center, "an assistance center for immigrants" located in Ohio, for several years in the early 1990's, until 1993. The October 14 letter advises Ms. Thomas that she is responsible for "illegal and unauthorized" expenditures, "which constitute theft of client funds." The letter seeks restitution of "funds owed to clients and Shiloh Center" in the amount of $8,864.75. Appellants' counsel objected to the admission of the letter on hearsay grounds; the State argued it was admissible as "evidence of other wrongs to show scheme." The court admitted the letter.

Appellants argue that the trial court erred in admitting the letter because it did

13. *Gonzalez v. Stevenson*, 791 S.W.2d 250, 253 (Tex.App.-Corpus Christi 1990, no writ).

14. *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex.2004).

15. *Id.*

16. *Id.*

17. *City of Brownsville*, 897 S.W.2d at 754.

18. Tex.R. Evid. 404(b).

19. *Allstate Texas Lloyds v. Potter*, 30 S.W.3d 658, 660 (Tex.App.-Texarkana 2000, no pet.);

*Johnson v. J. Hiram Moore, Ltd.*, 763 S.W.2d 496, 500 (Tex.App.-Austin 1988, writ denied); *Payne v. Hartford Fire Ins. Co.*, 409 S.W.2d 591, 594 (Tex.Civ.App.-Beaumont 1966, writ ref'd n.r.e.).

20. *Daggett v. State*, 187 S.W.3d 444, 454 (Tex. Crim.App.2005) (citing *Siqueiros v. State*, 685 S.W.2d 68, 71 (Tex.Crim.App.1985) ("where an extraneous offense may have been improperly admitted in the State's case-in-chief, subsequently admitted evidence can render the error harmless.")).

21. The letter is addressed to "Ruth Resendez;." Ms. Thomas testified that her name was "Ruth Resendez" in 1993.

not establish acts Ms. Thomas took in preparation for the charged offense, but instead, merely showed that she had engaged in prior acts similar to the charged offense. Thus, appellants argue, the letter was "pure propensity evidence" prohibited by rule 404(b).

The State argues that the trial court acted within its discretion in admitting the letter to show that Ms. Thomas had a plan and motive to open her own immigration consulting business where she would continue to profit from immigrants without supervision. The State also argues that appellants "opened the door" to the October 14 letter by eliciting testimony from Ms. Thomas on direct examination that she obtained her experience in filling out immigration forms from her employment at the Shiloh Center. The State further argues that even if the trial court abused its discretion in admitting the letter, appellants have not shown that the error, if any, caused the rendition of an improper judgment because there is an abundance of undisputed evidence to independently support the jury's findings as to the violations of the NPA and the DTPA.

During the defense case-in-chief, defense counsel asked Ms. Thomas, "[d]id you run a scam, Ms. Thomas?" and "[d]id you try to rip people off?" Ms. Thomas replied "no," that she wanted to have a good business, and that "this is what hurts [her] from these accusations."

We agree with the State that assuming, without deciding, that the October 14 letter was inadmissible "propensity evidence" under rule 404(b), appellants have not shown that the judgment turned on admission of the letter.[22] As discussed below, Ms. Thomas testified, with regard to the charged offenses, that she (1) interviewed clients to determine if they were eligible for immigration benefits, (2) advised clients as to whether to file an application for benefits, (3) decided which immigration category a client should apply under and filled out the applicable forms, (4) charged clients a fee each time documents were drafted, (5) was a notary at the time she accepted money from clients for providing immigration services, (6) notarized Mr. Thomas's signature on documents even though she was not present when he signed the documents, and (7) notarized her own signature. In addition, Claudia Beltran testified that she paid Ms. Thomas $850.00 in cash in exchange for immigration services, including the filing of an application for permanent residency. Marco Cubas testified that he paid Ms. Thomas approximately $1,800.00 in exchange for her services in preparing an application for residency. Mr. Cubas testified that Ms. Thomas represented to him that she was an immigration attorney. He also testified that Ms. Thomas advised him to ignore several notices regarding his failure to appear at an immigration hearing in Houston and that he should ignore the deportation notice he had received.

During closing argument, the State briefly referred to the October 14 letter twice:

> [Prosecutor]: Ms. Thomas came across with the scheme, this plan, this blueprint of how to make a lot of money at Shiloh Community Center with immigrants. And she found out that they were the perfect victims.... They are the perfect victims. And she discovered that at Shiloh because she made money from the immigrants that they were requiring for her to pay it back. Look at the exhibit. They held her accountable. They wanted her to pay it back.
>
> . . . .

22. *See Armstrong,* 145 S.W.3d at 144.

[The evidence] is overwhelming. Make [the defendants] accountable. Shiloh made them accountable. And this is the process, ladies and gentlemen, how we bring people here to court, to hold them accountable for their behavior.

We conclude that the State presented abundant evidence and testimony (including the defendants' testimony) regarding the charged offense. After reviewing the entire record, we conclude that appellants have not shown that the judgment turned on the admission of the October 14 letter.[23] We conclude the trial court did not abuse its discretion in admitting the letter. Appellants' first issue is overruled.

By their second issue, appellants contend there is "no evidence" to support the jury's finding that each appellant acquired $469,416.50 by means of an unlawful act or practice (Question No. 6). Appellants contend that the trial court erred in admitting the only exhibits introduced to support the jury's finding to Question No. 6—Exhibits 5, 10, and 12—because they are hearsay. Thus, appellants argue, without the erroneously-admitted exhibits, no evidence exists to support the jury's finding.

Exhibit 5 is four receipt books seized from appellants' business, Tramites Migratorios. Exhibit 10 is a computer printout of electronic files seized from the computer at appellants' business. Exhibit 12 is a one-page hand-written calculation summarizing information from Exhibits 5 and 10. The State acknowledges that Exhibits 5, 10, and 12 are the only evidence of payments made to appellants by customers. The State requested that the jury order restitution of half the amount paid to

appellants from December 2000 to February 2004 (as reflected in the exhibits) from each appellant; the jury's answer to Question 6 and the judgment complies with the State's request.

The State presented the testimony of Juan Ramirez, a compliance specialist with the Attorney General's office. Ramirez testified that Exhibit 5, the receipt books, reflected payments from clients to appellants' business totaling $138,729.00 from the period of April 2003 to February 2004. He also testified that Exhibit 10 reflected payments from clients to appellants' business totaling $800,084.00 for the period December 2000 through March 2003. Exhibit 12 shows that the total of the amounts shown in Exhibits 5 and 10 is $938,833.00, reflecting monies paid to appellants' business between December 2000 through February 2004.

Appellants argue that the exhibits are hearsay and that the State did not establish an exception to the hearsay rule. The State argues the trial court did not err in admitting the exhibits because they are business records. We agree.

A threshold question is whether appellants preserved their hearsay complaint with regard to Exhibit 10. To preserve a complaint, a party must make a timely and specific objection that is followed by an adverse ruling.[24] Even though an objection to evidence is properly made, prior or subsequent presentation of essentially the same evidence without objection waives error.[25] In addition, an objection made at trial must mirror the contention on appeal or the point of error will

---

23. *See id.* We also note that although appellants assert that the trial court committed "reversible error" in admitting the letter, they provide no argument or authority addressing how admitting the letter probably caused the rendition of an improper judgment.

24. Tex.R.App. P. 33.1.

25. *Sauceda v. Kerlin*, 164 S.W.3d 892, 919 (Tex.App.-Corpus Christi 2005, pet. granted, judgm't vacated w.r.m.).

be waived.[26] Here, appellants' counsel initially objected to Exhibit 10 on the basis of hearsay, and the trial court sustained the objection. However, Exhibit 10 was subsequently offered by the State, and appellants' counsel objected only that the information was "not relevant" and "unfairly prejudicial." We conclude that because appellants failed to assert a hearsay objection to Exhibit 10 the second time it was offered, and because their hearsay objection on appeal does not comport with their objection at trial, appellants have failed to preserve any error regarding the admission of Exhibit 10.

The predicate for the introduction of a record under the business records exception, Texas Rule of Evidence 803(6), requires proof (1) that the record was made by or from information transmitted by a person with personal knowledge of the events or conditions recorded, (2) that the record was made at or near the time of the events or conditions recorded, and (3) that it was in the ordinary course of the reporting entity's business to make and keep such records.[27] In reviewing the trial court's ruling, an appellate court's task is only to determine whether there was a sufficient evidentiary basis for the court's determination.[28]

Here, Ms. Thomas testified that the receipt books (Exhibit 5) were kept in the regular course of business and reflected the record of payments made by clients for immigration services. Ms. Thomas testified that she checked the receipts and accounted for the monies received at the end of each business day. She also testified that when time allowed, information regarding amounts paid by clients was entered into the computer. We conclude there was a sufficient evidentiary basis for the trial court's admission of Exhibit 5. Because the trial court properly admitted Exhibit 5 and appellants failed to preserve any error regarding the admission of Exhibit 10, we hold that the evidence is legally sufficient to support the jury's finding that each appellant acquired $469,416.50 by means of an unlawful act or practice. We overrule appellants' second issue.[29]

In their third issue, appellants contend the trial court erred in rendering a judgment that violates section 17.47(d) of the DTPA because it ordered restitution to "consumers" without specifying the identifiable persons entitled to the restitution and the amount of money to be paid to each identified person. In their fourth issue, appellants contend the judgment violates section 17.47(d) because it ordered restitution in an amount that includes monies paid to appellants beyond a point two years prior to the filing of the lawsuit. Because both issues challenge the judgment as violating section 17.47(d) of the DTPA, we address them together.

---

26. *See Santellan v. State,* 939 S.W.2d 155, 171 (Tex.Crim.App.1997); *Doyle v. State,* 24 S.W.3d 598, 602 (Tex.App.-Corpus Christi 2000, pet. ref'd).

27. *Perry v. State,* 957 S.W.2d 894, 899 (Tex. App.-Texarkana 1997, pet. ref'd); *Clark v. Walker–Kurth Lumber Co.,* 689 S.W.2d 275, 281 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e); *see also* Tex.R. Evid. 803(6).

28. *Walker–Kurth Lumber Co.,* 689 S.W.2d at 281.

29. We note that as a sub-issue to their second issue, appellants also argue that the evidence is legally insufficient because Exhibit 10 includes payments made by clients during a time period (from December 2000 to February 9, 2002) barred by the two-year limitations period set forth in section 17.47 of the DTPA. We have already determined that appellants failed to preserve any issue regarding the admission of Exhibit 10. We also discuss appellants' "limitations" argument as it relates to their fourth issue.

Whether a particular remedy is available under a statute is a question of law for the court.[30] We review questions of statutory interpretation de novo.[31] In construing a statute, our objective is to determine and give effect to the legislature's intent.[32] If the statutory text is unambiguous, we "must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results."[33] Legislative intent is derived from the entire act, not just its isolated portions.[34]

The State asserts that "[t]he boundaries of statutory authority, with respect to an award of restitution under section 17.47(d) of the DTPA is an issue of first impression, and its determination rests on principles of statutory construction."

Section 17.47(d) of the DTPA provides: (d) The court may make such additional orders or judgments as are necessary to compensate identifiable persons for actual damages or to restore money or property, real or personal, which may have been acquired by means of any unlawful act or practice. Damages may not include any damages incurred beyond a point two years prior to the institution of the action by the consumer protection division. Orders of the court may also include the appointment of a receiver or a sequestration of assets if a person who has been ordered by a court to make restitution under this section has failed to do so within three months after the order to make restitution has become final and nonappealable.[35]

The trial court's judgment provided, in pertinent part:

6. IT IS FURTHER ORDERED by the Court that Plaintiff STATE OF TEXAS have and recover from Defendant RUTH C. THOMAS the sum of $511,416.50 comprised of the following amounts:

a. The amount of $469,416.50 as restitution to consumers of money acquired by means of false, misleading, or deceptive acts or practices of Defendant RUTH C. THOMAS;

---

30. *Wal–Mart Stores, Inc. v. McKenzie,* 997 S.W.2d 278, 280 (Tex.1999) (citing *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex. 1989) (statutory construction is a question of law)).

31. *Bragg v. Edwards Aquifer Auth.,* 71 S.W.3d 729, 734 (Tex.2002); *Edwards Aquifer Auth. v. Chem. Lime, Ltd.,* 212 S.W.3d 683, 697 (Tex. App.-Austin 2006, pet. filed).

32. *Edwards Aquifer Auth.,* 212 S.W.3d at 697 (citing *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.,* 145 S.W.3d 170, 176 (Tex.2004)).

33. *Id.* (quoting *Mega Child Care, Inc.,* 145 S.W.3d at 177).

34. *Id.* (citing *City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 25 (Tex.2003)).

35. Tex. Bus. & Com.Code Ann. § 17.47(d) (Vernon Supp.2006). Section 17.47 provides that the consumer protection division may initiate proceedings to enjoin unlawful acts or practices pursuant to the DTPA. *See id.* § 17.47. Here, the State's petition alleged that appellants violated the DTPA by engaging in the unauthorized practice of law and violated the Notary Public Act. *See* Tex. Gov't Code Ann. § 406.016 (Vernon 1998). Section 406.016(d) provides that "[a] notary public not licensed to practice law in this state may not give legal advice or accept fees for legal advice." *See id.* § 406.016(d). Section 406.017(d) provides that a violation of the section is a deceptive trade practice actionable under the DTPA. *See id.* § 406.017(d). In its petition, the State requested, among other relief, that the court order appellants "to restore all money or other property taken from identifiable persons by means of unlawful acts or practices, or in the alternative award judgment for damages to compensate for such losses" and that the court order "disgorgement of all monies taken by [appellants] as a result of their unauthorized practice of law."

. . .

7. IT IS FURTHER ORDERED by the Court that Plaintiff STATE OF TEXAS have and recover from Defendant JOHN W. THOMAS the sum of $511,416.50 comprised of the following amounts:

a. The amount of $469,416.50 as restitution to consumers of money acquired by means of false, misleading, or deceptive acts or practices of Defendant JOHN W. THOMAS;

. . .

8. IT IS FURTHER ORDERED by the Court that Defendants shall make restitution to consumers as provided in this Final Judgment, through the Consumer Protection and Public Health Division of the Office of the Texas Attorney General, in order to restore money acquired by means of Defendants' unlawful acts or practices. With respect to amounts of restitution that the STATE OF TEXAS may collect from Defendants, it is hereby ordered that the review, determination and allocations of amounts of money to be restored to consumers shall be within the sole discretion of the Consumer Protection and Public Health Division.

■■■ Appellants argue that section 17.47(d) requires the trial court to specify (1) identifiable persons to whom money is to be restored and (2) the amount of money to be paid to each identifiable person. Appellants argue that because section 17.47(d) does not expressly authorize the trial court to order the consumer protection division to determine how much money is paid to whom, the trial court lacked

authority to do so and the judgment is "voidable." The State argues that section 17.47(d) provides trial courts with two separate alternatives: they may make orders or judgments to (1) compensate identifiable persons for actual damages *or* (2) restore money acquired by unlawful means. Thus, the "identifiable persons" language applies only to the first alternative, when trial courts award actual damages.

■■■ We agree with the State. Actions filed by the attorney general under section 17.47 of the DTPA qualify as de facto class actions.[36] Here, the members of the class (consumers whose money was acquired by an unlawful act or practice) may be identified by examining the receipt books and computer printout from appellants' business. We conclude that the plain language of section 17.47(d) authorizes the trial court to order the restoration of money or property acquired by unlawful means, without any requirement that the trial court specify "identifiable persons" or the amount of money to be paid to each consumer.[37]

Appellants also contend that the judgment violated section 17.47(d) because it ordered restitution in an amount that includes money paid to appellants more than two years prior to the institution of the State's lawsuit. The State's lawsuit was filed on February 9, 2004. Appellants argue that the language of section 17.47(d) that "[d]amages may not include any damages incurred beyond a point two years prior to the institution of the action by the consumer protection division" means that the trial court was not authorized to re-

**36.** *See Bara v. Major Funding Corp.*, 876 S.W.2d 469, 472–73 (Tex.App.-Austin 1994, writ denied).

**37.** We also note that the judgment ordered funds held in appellants' names in four accounts at two banks transferred by cashier's check to the Consumer Protection Division of the AG's office; the judgment does not identify, however, the sums in the accounts.

store monies paid by consumers any time before February 9, 2002. According to appellants, because Exhibit 10 included monies paid by consumers between December 2000 and March 2003, the judgment improperly ordered restitution of monies paid beyond the two-year period prior to institution of the suit.

The State asserts that the question of whether, as it contends, the two-year limitation in section 17.47(d) applies only to actual damages, and not to restitution, is also an issue of first impression.[38] The State argues that because the second alternative available in section 17.47(d)—restoration of money or property—is separate from the first alternative (compensating identifiable persons for actual damages), the two-year limitations period applies only to the award of actual damages, and not to restitution. Again, we agree with the State's interpretation.

Appellants argue that the term "damages," as used in section 17.47(d), includes restitution. In support, appellants cite *Denver Indep. Sch. Dist. v. Moses*, 51 S.W.3d 386, 391 (Tex.App.-Amarillo 2001, no writ), and *Schein v. Stromboe*, 102 S.W.3d 675 (Tex.2002).

In *Schein*, the supreme court notes that the class-action plaintiffs "claim a number

of different type of damages."[39] After a brief reference to the plaintiffs' claims for restitution, the court refers to the plaintiffs' "*other* damage claims."[40] Appellants argue that this language establishes "clearly" that "damages include restitution." We are unpersuaded that this language establishes that "restitution" and "damages" are indistinguishable in every context.

In *Denver Indep. Sch. Dist.*, the Amarillo Court of Appeals stated that "[a]ward of restitution is an award of 'damages.' "[41] In *Hanners v. State Bar of Texas*, 860 S.W.2d 903, 910 (Tex.App.-Dallas 1993, no writ), the Dallas Court of Appeals stated:

> Although case law on this issue is scant, the supreme court has previously referred to a "suit for damages in the nature of restitution." *See Smith v. National Resort Communities, Inc.*, 585 S.W.2d 655, 660 (Tex.1979); *see also City of Harker Heights v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex. App.-Austin 1992, no writ) (referring to restitution as a "measure of damages"). A pre-*Smith* opinion from this Court, however, attempts to distinguish between restitution and damages. *See Coon v. Schoeneman*, 476 S.W.2d 439, 441 (Tex.Civ.App.-Dallas 1972, writ ref'd

**38.** The State notes that we are asked to rule on a question that went unanswered in *Miller v. State*, No. 14–02–884–CV, 2003 Tex.App. LEXIS 9771, at *6 n. 4, 2003 WL 22707135, at *2 n. 4 (Tex.App.-Houston [14th Dist.] Nov. 18, 2003, no pet.) (mem.op.). The *Miller* court did not address appellant's argument that claims against him were barred by the statute of limitations in section 17.47(d) because it was waived. *See id.* 2003 Tex.App. LEXIS 9771, at *5, *6 n. 4, 2003 WL 22707135, at *1, *2 n. 4. The *Miller* court noted:

> The State apparently presented the trial court with authority for the proposition that the statute of limitations in section 17.47 applies only to actual damages, not restitu-

tion. *See* Tex. Bus. & Com.Code Ann. § 17.47(d). Because the question of whether the statute of limitation[s] applies is not properly before this court, we do not rule on it.
>
> *Id.*

**39.** Henry *Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 694 (Tex.2002).

**40.** *See id.* (emphasis added).

**41.** *Denver City Indep. Sch. Dist. v. Moses*, 51 S.W.3d 386, 391 (Tex.App.-Amarillo 2001, no writ) (citing *Hanners v. State Bar of Texas*, 860 S.W.2d 903, 910 (Tex.App.-Dallas 1993, no writ)).

n.r.e.). Although the *Smith* opinion does not expressly overrule *Coon* on this point, we conclude that it implicitly overruled this Court's distinction between damages and restitution. We hold, therefore, that a restitution award is a damage award.

We disagree with the *Hanners* court's interpretation of the supreme court's language in *Smith.* The cited passage in *Smith* states:

> Accordingly, we hold that the Smiths established their right to judgment rescinding their contract with NRC for the purchase of the lot in question. As previously noted, the trial court rendered a take-nothing judgment against the Smiths in their suit for rescission and this rendered unnecessary a determination of the suit for damages in the nature of restitution. Rescission is an equitable remedy and, as a general rule, the measure of damage is the return of the consideration paid, together with such further special damage or expense as may have been reasonably incurred by the party wronged on account of the contract. *See also Atkins v. Beasley,*

544 S.W.2d 505 (Tex.Civ.App.1976, no writ) and cases there cited stating the principle that if damages as well as rescission are essential to accomplish full justice, they will both be allowed.[42]

We decline to rely on *Smith* as authority for the proposition that "damages" encompasses "restitution" in every context.

The State argues that section 17.47(d)'s distinction between compensation for actual damages and restoration of money and property in actions by the State mirrors the remedies available in private actions by consumers.[43] Section 17.50(b)(1) provides for the recovery of "economic damages" by a prevailing consumer; section 17.50(b)(3) provides for the restoration of money or property acquired in violation of the statute.[44]

 Actual damages for misrepresentation under the DTPA are those recoverable at common law.[45] Under the DTPA, a plaintiff's damages can be measured in one of two ways: "(1) the 'out of pocket' measure, which is the 'difference between the value of that which was parted with and the value of that which was

---

**42.** *Smith v. Nat'l Resort Communities, Inc.,* 585 S.W.2d 655, 659–60 (Tex.1979) (some citations omitted).

**43.** Section 17.47 of the DTPA applies to actions by the State. *See* Tex. Bus. & Com.Code Ann. § 17.47(a) (Vernon Supp.2006) ("Whenever the consumer protection division has reason to believe that any person is engaging in ... any act or practice declared to be unlawful by this subchapter, ..."). In contrast, section 17.50 provides for a private action by a consumer. *See* Tex. Bus. & Com.Code Ann. § 17.50(a) (Vernon Supp.2006) ("A consumer may maintain an action ...").

**44.** *See id.* § 17.50(b)(1), (b)(3) (Vernon Supp. 2006).

**45.** *W.O. Bankston Nissan, Inc. v. Walters,* 754 S.W.2d 127, 128 (Tex.1988); *Matheus v. Sasser,* 164 S.W.3d 453, 458 (Tex.App.-Fort Worth 2005, no pet.) (citing *Arthur Andersen*

*& Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 816 (Tex.1997)); *Valley Nissan, Inc. v. Davila,* 133 S.W.3d 702, 713 (Tex.App.-Corpus Christi 2003, no pet.). The DTPA currently provides that a prevailing plaintiff may recover "economic damages." Tex. Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon Supp.2006). Before 1995, the statute provided for the recovery of "actual damages." *See* Act of May 29, 1989, 71st Leg., R.S., ch. 380, § 2, 1989 Tex. Gen. Laws 1490, 1491 (amended 1995). Although the statutory language has changed, Texas courts continue to treat the term "economic damages" as synonymous with "actual damages." *See, e.g., Dal–Chrome Co. v. Brenntag Southwest, Inc.,* 183 S.W.3d 133, 143–44 (Tex. App.-Dallas 2006, no pet.); *Matheus,* 164 S.W.3d at 458; *Garza v. Chavarria,* 155 S.W.3d 252, 257 n. 2 (Tex.App.-El Paso 2004, no pet.).

received'; and (2) the 'benefit of the bargain' measure, which is the difference between the value as represented and the value actually received."[46] In addition, section 17.50(b)(3) authorizes the equitable remedy of rescission and restitution, pursuant to which a consumer may recover all consideration paid for the defective product.[47]

A cardinal rule of statutory construction is that every word used must be presumed to have been used for a purpose.[48] It is also presumed that words excluded were left out for a purpose.[49]

■ Here, the first sentence of section 17.47(d) provides that a court may make orders for actual damages or for restoration of money or property.[50] The second sentence of the section establishes a two-year limitation applicable to "damages," but is silent as to restoration of money or property.[51] We conclude that the two-year limitation in section 17.47(d) applies only to damages, not restitution.[52]

In addition, we note that the primary purpose of a statute of limitations—ensuring that a defendant is placed on notice of claims within a reasonable time, when evidence and witnesses are available—is served when, as in the present case, the attorney general brings a de facto class action.[53] Here, the filing of the suit placed appellants on notice, not only of the specific claims being asserted, but also of the number of potential consumers who may ultimately participate in the final judgment.[54]

■ Moreover, "the State in its sovereign capacity, unlike ordinary litigants, is not subject to the defenses of limitations, laches, or estoppel."[55] The rationale behind the inapplicability of the doctrine is to allow governmental entities to enforce statutes intended protect the general public.[56]

We hold that the trial court's judgment, which ordered restitution of monies acquired by appellants more than two years

---

**46.** *Walters*, 754 S.W.2d at 128.

**47.** *See* Tex. Bus. & Com.Code Ann. § 17.50(b)(3) (Vernon Supp.2006); *Schenck v. Ebby Halliday Real Estate, Inc.*, 803 S.W.2d 361, 366 (Tex.App.-Fort Worth 1990, no writ); *David McDavid Pontiac, Inc. v. Nix*, 681 S.W.2d 831, 835 (Tex.App.-Dallas 1984, writ ref'd n.r.e.); *Smith v. Kinslow*, 598 S.W.2d 910, 915 (Tex. Civ.App.-Dallas 1980, no writ) (all holding that restoration of the consideration paid, as authorized by section 17.50(b)(3), is a statutory recognition of the equitable remedy of rescission and restitution); *see also Carrow v. Bayliner Marine Corp.*, 781 S.W.2d 691, 696 (Tex.App.-Austin 1989, no writ) (noting that section 17.50(b)(3) not only codifies the common law of equitable rescission, but provides an independent ground of recovery that permits the consumer to obtain restoration of money and property).

**48.** *Love v. State Bar of Tex.*, 982 S.W.2d 939, 942 (Tex.App.-Houston [1st Dist.] 1998, no

pet.) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981)).

**49.** *Id.*

**50.** Tex. Bus. & Com.Code Ann. § 17.47(d) (Vernon Supp.2006).

**51.** *Id.*

**52.** *See id.*

**53.** *See Bara*, 876 S.W.2d at 472.

**54.** *See id.*

**55.** *State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993); *Brooks v. State*, 91 S.W.3d 36, 39 (Tex.App.-Amarillo 2002, no pet.); *Shields v. State*, 27 S.W.3d 267, 275 (Tex.App.-Austin 2000, no pet.); *Welch v. State ex rel. Long*, 880 S.W.2d 79, 82 (Tex.App.-Tyler 1994, writ denied); *Waller v. Sanchez*, 618 S.W.2d 407, 409 (Tex.Civ.App.-Corpus Christi 1981, no writ).

**56.** *Waller*, 618 S.W.2d at 409.

prior to the filing of the State's lawsuit, did not violate section 17.47(d). We overrule appellants' third and fourth issues.

We AFFIRM the trial court's judgment.