NUMBER 13-07-00278-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ANTHONY ROGERS, Appellant,


v.



THE CITY OF MCALLEN, Appellee.

 


On appeal from the 332nd District Court of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Garza and Benavides


Memorandum Opinion by Justice Garza



 Appellant, Anthony Rogers, challenges the trial court's judgment in favor of
appellee, the City of McAllen (the "City"). Upon being terminated from his employment as
Fire Chief, Rogers sued the City seeking a declaratory judgment that the City failed to
comply with the Texas Open Meetings Act. See Tex. Civ. Prac. & Rem. Code Ann. §
37.004 (Vernon 2008); Tex. Gov't Code Ann. § 551.001-.146 (Vernon Supp. 2007). The
City counterclaimed, requesting declaratory relief and attorney's fees. After a bench trial,
the trial court ruled in favor of the City. By two issues on appeal, Rogers claims that, as
a matter of law, the City failed to give proper notice of the McAllen City Commission (the
"Commission") meeting during which the decision was made to terminate him. By three
issues, Rogers contests the trial court's award of attorney's fees to the City. We affirm.

I. Background

 Rogers was hired by the City as its Fire Chief in November 2001. In October of
2002, Rogers became embroiled in a controversy involving a list created by the McAllen
Fire Department (the "Fire Department") of properties to be inspected for fire and building
code violations. Almost all of the properties listed were owned by a single City
Commissioner, leading to suspicions that the list was created specifically to target that
individual. Rogers initially told City Manager Mike Perez, who was investigating the matter,
that he did not know who created the list; in fact, Rogers did know who created the list. 
Upon learning of Rogers' false statement, Perez asked that the Commission take action
regarding Rogers' employment. Subsequently, the City provided Rogers with notice of the
October 28, 2002 Commission meeting, which included the following agenda item: 
"Consideration and Action relating to the employment of the Fire Chief."

 Having been notified that the Commission was going to consider termination of his
employment, Rogers called a press conference prior to the October 28, 2002 meeting to
plead his side of the story. At the meeting, scores of fire department employees and
advocates of Rogers protested in his support. The Commission decided to temporarily
suspend Rogers from his duties as Fire Chief. As part of the terms of the suspension,
Rogers was forbidden from communicating with the Fire Department. Rogers was also
placed on one year of probation, during which he was required to acknowledge Perez's and
the Commission's authority over him, to follow Perez's instructions, and to keep Perez
informed.

 However, Rogers repeatedly contacted and gave directions to Fire Department staff,
including the acting chief, during his suspension. Moreover, when he returned from
suspension, he often disregarded Perez's instructions. Nearly a year after Rogers returned
from serving his suspension, the Commission listed the following as item number 9(E) on
the agenda for its September 22, 2003 meeting:

Consideration and Action regarding request by Chief Rogers to meet with
City Commission to discuss the investigation conducted by the Civil Service
Commission and consideration and possible action regarding Chief
Rogers'[s] job performance and employment.


This agenda item was listed under "Executive Session," after the "End of Public Hearing." 
Rogers received a copy of the agenda on September 19, 2003, after which he wrote to the
McAllen City Secretary asking that the "discuss[ion] of the investigation conducted by the
Civil Service Commission" be removed from the agenda.

 At the September 22, 2003 Commission meeting, the commissioners considered
the issue of Rogers's employment with the City. The commissioners held an executive
session, then returned to an open session and gave Rogers an opportunity to speak
regarding his job performance and employment. Subsequently, Perez recommended that
Rogers's employment be terminated, and the commissioners unanimously approved the
recommendation.

 On May 5, 2004, Rogers sued the City, seeking a declaratory judgment that the City
failed to comply with the notice requirements provided in the Texas Open Meetings Act,
and requesting attorney's fees. (1) See Tex. Civ. Prac. & Rem. Code Ann. § 37.004; Tex.
Gov't Code Ann. § 551.142. Specifically, Rogers contended that the notice provided by
the City of the agenda for the September 22, 2003 meeting did not expressly state that the
Commission would consider terminating his employment. On May 24, 2004, the City filed
an original answer and counterclaim for declaratory judgment, seeking a declaration that
its notice complied with the provisions of the Open Meetings Act and requesting attorney's
fees.

 A bench trial took place on November 14, 2005. (2) After the parties provided post-trial
briefing, the trial court found in favor of the City and awarded the City $20,000 in trial
attorney's fees, along with $32,000 in attorney's fees if the case is appealed to this Court,
$10,000 if a petition for review is filed with the Texas Supreme Court, and $18,000 if the
supreme court orders briefing. The trial court entered findings of fact and conclusions of
law on March 27, 2007. Rogers filed a motion for new trial with the trial court on March 2,
2007, which was overruled by operation of law. See Tex. R. Civ. P. 329b(c). Rogers filed
his notice of appeal on May 3, 2007.

II. Discussion


A. Open Meetings Act


 By his first issue, Rogers contends that the notice provided by the City of the
September 22, 2003 meeting was insufficient as a matter of law under the Texas Open
Meetings Act. By his second issue, Rogers claims that the "evidence adduced at trial did
not support a finding that the notice provided by the City and contained in the City
Commission agenda of September 22, 2003 met the requirements for an 'open meeting,'
as that term is defined under Texas law." We construe Rogers's second issue as a
challenge to the legal sufficiency of the evidence supporting the trial court's judgment, and
we consider Rogers's first two issues together.

 1. Standard of Review

 We review a trial court's findings of fact for legal and factual sufficiency of the
evidence by the same standards applied when reviewing evidence supporting jury findings. 
Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); Barrera v. Hondo Creek Cattle Co.,
132 S.W.3d 544, 547 (Tex. App.-Corpus Christi 2004, no pet.). The trial court's
conclusions of law are given a de novo review on appeal, and these legal conclusions will
be upheld unless they are erroneous as a matter of law. Barrera, 132 S.W.3d at 547
(citing Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co., 3 S.W.3d 112, 121 (Tex.
App.-Corpus Christi 1999, pet. denied)).

 Rogers bore the burden of proof in the trial court to show that the City's notice did
not meet the requirements of the Open Meetings Act. See Dodd v. City of Beverly Hills,
78 S.W.3d 509, 514 n.4 (Tex. App.-Waco 2002, pet denied); Swate v. Medina Cmty.
Hosp., 966 S.W.2d 693, 697 (Tex. App.-San Antonio 1998, pet. denied). When a party
attacks the legal sufficiency of an adverse finding on an issue on which it has the burden
of proof, that party must demonstrate on appeal that the evidence establishes, as a matter
of law, all vital facts in support of the issue. Dow Chem. Co. v. Francis, 46 S.W.3d 237,
241 (Tex. 2001) (citing Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989); W.
Wendell Hall, Standards of Review in Texas, 29 St. Mary's L.J. 351, 481-82 (1998)). In
reviewing such a challenge, we must first examine the record for evidence that supports
the finding, while ignoring all evidence to the contrary. Id. If there is no evidence to
support the finding, we will then examine the entire record to determine if the contrary
proposition is established as a matter of law. Id. The issue should be sustained only if the
contrary proposition is conclusively established. Id. (citing Croucher v. Croucher, 660
S.W.2d 55, 58 (Tex. 1983)).

 2. Applicable Law

 Section 551.002 of the Texas Government Code provides that "[e]very regular,
special, or called meeting of a governmental body shall be open to the public, except as
provided by this chapter." Tex. Gov't Code Ann. § 551.002; see id. § 551.001(3)(C)
(defining "governmental body" as, inter alia, "a municipal governing body in the state"). 
Section 551.041 states that "[a] governmental body shall give written notice of the date,
hour, place, and subject of each meeting held by the governmental body." Id. § 551.041. (3)

 Generally, as long as a meeting notice alerts the reader to the topic for
consideration, it is not necessary for the notice to state all of the consequences which may
flow from consideration of the topic. Cox Enters., Inc. v. Board of Trustees, 706 S.W.2d
956, 958 (Tex. 1986); see Sokolow v. City of League City, 37 F.Supp.2d 940, 946-47 (S.D.
Tex. 1999). However, when the topic is of special interest to the public, the description
must be more detailed, and must provide "reasonable specificity of the subject matter to
be considered." Cox, 706 S.W.2d at 959 (citing Op. Tex. Att'y Gen. No. H-1045 (1977)). 
Moreover, "as public interest in a matter increases, a correspondingly more detailed
description of the subject under consideration must be given." Rettberg v. Tex. Dep't of
Health, 873 S.W.2d 408, 411 (Tex. App.-Austin 2004, no pet.) (citing Cox, 706 S.W.2d at
959; Point Isabel Indep. Sch. Dist. v. Hinojosa, 797 S.W.2d 176, 180 (Tex. App.-Corpus
Christi 1990, writ denied)).

 In Cox, the Texas Supreme Court found that the word "personnel" was insufficiently
specific to notify the public of the selection of a new school superintendent. 706 S.W.2d
at 959. The court, noting that the "[s]election of a new school superintendent is not in the
same category as ordinary personnel matters," found that more specificity was needed in
order to provide "full and adequate" notice to the public under the Open Meetings Act. Id.;
see Salazar v. Gallardo, 57 S.W.3d 629, 633-34 (Tex. App.-Corpus Christi 2001, no pet.);
Point Isabel, 797 S.W.2d at 187.

 The Waco Court of Appeals has held that, as a matter of law, the public has a
"special interest in jobs of the Fire Chief and the Fire Captain." Markowski v. City of Marlin,
940 S.W.2d 720, 726 (Tex. App.-Waco 1997, pet. denied) (citing Mayes v. City of De
Leon, 922 S.W.2d 200, 203 (Tex. App.-Eastland, 1996, writ denied) (holding that the job
of a police chief was of special interest to the public because of "the broad contact with the
public that those duties involve")).

 3. Analysis

 The City does not dispute that Rogers's employment as Fire Chief was a matter of
"special public interest" and therefore that the notice of the September 2003 City
Commission meeting was required to be more specific that of an "ordinary personnel
matter." See Cox, 706 S.W.2d at 959. (4)

 Rogers argues that the City's notice of the meeting was insufficient, in part because
it "did not include the term 'disciplinary action' or the word 'termination'" in the agenda
notice, "nor did it separate [Rogers's] alleged 'request' to discuss the Civil Service
investigation with the City Commission from the distinct issue of taking disciplinary action
against [Rogers]." (5) However, the City was only required to provide "reasonable specificity
of the subject matter to be considered" at the meeting. See Cox, 706 S.W.2d at 959. The
notice was reasonably specific in that it stated that the Commission might take "possible
action regarding Chief Rogers's job performance and employment."

 Moreover, Rogers testified that the City's notice of the October 2002 City
Commission meeting agenda provided sufficient notice to him that the commission might
terminate his employment at that meeting. However, that notice was, if anything, less
specific than the notice regarding the September 2003 meeting. Rogers's contention that
the September 2003 notice did not sufficiently inform the public of the possibility that he
might be terminated as Fire Chief is therefore unfounded.

 Rogers further contends that the matter of his potential termination was of such
public importance that it required a notice with specificity beyond that which is required
under Cox. See Cox, 706 S.W.2d at 959; Rettberg, 873 S.W.2d at 411 (stating that "as
public interest in a matter increases, a correspondingly more detailed description of the
subject under consideration must be given"). To support this contention, Rogers relies
heavily on the large display of public support for him at the October 2002 meeting. Perez
testified that 125 to 150 people appeared at that meeting in support of Rogers and that
there was picketing outside of City Hall during the meeting. Perez noted that this level of
public concern was rare, and that it was unprecedented for such heavy public turnout and
picketing to also be accompanied by a press conference. Rogers cites Perez's testimony
in support of his claim that "public interest in possible disciplinary action against this Fire
Chief rose to an entirely new level."

 Even if we were to agree that the "entirely new level" of public concern for Rogers
in October 2002 mandated a stricter notice requirement than that elucidated in Cox, the
record does not reflect that this level of concern persisted until September 2003. The
October 2002 meeting was held at a time that the fire investigation controversy was a focus
of significant public interest. In contrast, the September 2003 meeting and its agenda item
regarding Rogers's employment related solely to Rogers's alleged failure to comply with
the terms of his probationary period. It is also noteworthy that it was Rogers himself who
organized the October 2002 press conference and rallied his supporters to attend the
October 28, 2002 meeting. No such organization was evident in 2003. Therefore, we
agree with the trial court that, although there was significant media attention and public
interest paid to Rogers's employment in October 2002, the public did not have an
exceptionally high interest in Rogers's employment status in 2003 as would warrant an
stricter notice requirement.

 Moreover, assuming arguendo that the potential termination of Rogers's
employment was a matter of "special public interest" as late as September 2003, see
Markowski, 940 S.W.2d at 726, we find that the City's notice was sufficient under the Open
Meetings Act. Specifically, we concur with the trial court's finding of fact that the notice
"plainly states that the Commission would consider and possibly act upon Rogers'[s]
employment[,] . . . plainly communicates to the public [that] the subject matter of the
discussion would be Rogers'[s] employment as Fire Chief . . . [and] clearly implicates the
issue of possible termination of that employment." We further conclude that there was
legally sufficient evidence to support the trial court's findings of fact and that its conclusions
of law were not erroneous. See Barrera, 132 S.W.3d at 547; see also Dow Chem. Co., 46
S.W.3d at 241. Accordingly, Rogers's first two issues are overruled.

B. Attorney's Fees

 By his third and fourth issues, Rogers alleges that there was insufficient evidence
to support the trial court's award of attorney's fees to the City. By his fifth issue, Rogers
contends that the trial court improperly overruled his objections to the attorney's fees
affidavits filed by the City.

 1. Standard of Review

 In cases brought under the Open Meetings Act, the trial court has the discretion to
award "costs of litigation and reasonable attorney fees incurred by a plaintiff or defendant
who substantially prevails." Tex. Gov't Code Ann. § 551.142(b). "In exercising its
discretion, the court shall consider whether the action was brought in good faith and
whether the conduct of the governmental body had a reasonable basis in law." Id. 
Additionally, the trial court has the discretion to award reasonable and necessary attorney's
fees in cases brought under the Declaratory Judgments Act. See Tex. Civ. Prac. & Rem.
Code Ann. § 37.009 (Vernon 2008); Roberson v. City of Austin, 157 S.W.3d 130, 137 (Tex.
App.-Austin 2005, pet. denied). A trial court abuses its discretion if it acts in an arbitrary
or unreasonable manner, or if it acts without reference to any guiding rules or principles. 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 328, 241-42 (Tex. 1985). Under this
standard, we may not substitute our own judgment for the trial court's judgment. See
Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002).

 Under an abuse of discretion standard, legal insufficiency of the evidence is not an
independent reversible ground of error but is a relevant factor in assessing whether the trial
court abused its discretion. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex.
1991); see Weingarten Realty Investors v. Harris County Appraisal Dist., 93 S.W.3d 280,
283 (Tex. App.-Houston [14th Dist.] 2002, no pet.) (op. on reh'g). We also review a court's
ruling on the admission of evidence for abuse of discretion. City of Brownsville v.
Alvarado, 897 S.W.2d 750, 753 (Tex. 1995); see also Sadoskas v. Sadoskas, No. 13-02-216-CV, 2003 Tex. App. LEXIS 6211, at *3 (Tex. App.-Corpus Christi July 17, 2003, no
pet.) (mem. op.). Therefore, we consider Rogers's third, fourth, and fifth issues together.

 2. Analysis

 On July 31, 2006, the trial court held a hearing during which the parties presented
arguments and evidence regarding attorney's fees. At this time, the City filed affidavits by
Raymond Cowley and Renee McElhaney, two of the City's trial attorneys, regarding
attorney's fees. The trial court based its award of trial attorney's fees solely on Cowley's
affidavit; it based its award of appellate fees solely on McElhaney's affidavit. Following the
City's production of the affidavits at the hearing, Rogers's trial counsel made the following
objection:

 Your Honor, we object to the affidavit on a number of grounds. First
of all, we believe it's hearsay. There has been no testimony in this case as
to attorney's fees. If counsel wishes to seek attorney's fees, he has the
obligation to show that they are reasonable and necessary. I don't believe
that's been done in this case.


 Secondly, under the request for disclosures, which were propounded
upon the City of McAllen and which were responded to by the City of McAllen
- and I'll provide the Court, if I may, with a copy of these disclosures. Mr.
Cowley indicated under the expert provision of those disclosures that he
would be testifying as to reasonable and necessary attorney's fees. It's
highlighted, I believe, on the fourth page of the disclosures.


 He also testified that a reasonable fee for a board certified labor
lawyer would be $200.00. He said the issues in this case were neither novel
nor complex and that a non[-]board[-]certified attorney in labor and
employment would be billed out at $300.00 an hour. The hours that are set
forth in the affidavit are significantly higher than that if you go through them. 
He has not indicated whether any of these attorneys, other than himself, are
board certified in labor and employment law.


 He also did not provide these documents which presumably were
available at the time of trial pursuant to the request for disclosure which he
would have been required to do to rely upon them, so we object on that basis
as well.

 Rogers first contends on appeal that the trial court should not have considered
McElhaney's affidavit because McElhaney was not disclosed as an expert witness in
response to Rogers's request for disclosure. (6) The City argues that Rogers waived this
issue by not raising it in the trial court. We agree.

 In order to preserve a complaint for appellate review, a party must present to the
trial court a timely request, objection or motion, state the specific grounds therefor, and
obtain a ruling. Tex. R. App. P. 33.1(a); Bushell v. Dean, 803 S.W.2d 711, 712 (Tex. 1991);
Poland v. Grigore, 249 S.W.3d 607, 618 (Tex. App.-Houston [1st Dist.] 2008, no pet.)
(challenges concerning attorney fee awards must be preserved to be asserted on appeal);
see Thomas v. State, 226 S.W.3d 697, 704-05 (Tex. App.-Corpus Christi 2007, no pet.)
("The objection made at trial must mirror the contention on appeal or the point of error will
be waived.").

 Rogers's counsel did not object at trial to McElhaney's affidavit on the grounds that
she was not disclosed as an expert witness. Although Rogers's counsel did address the
fact that Cowley was disclosed as an expert witness with regard to appellate fees, he did
not complain that McElhaney had not been so disclosed. See Tex. R. App. P. 33.1(a)(1)(A)
(objection in trial court must "state[] the grounds for the ruling . . . with sufficient specificity
to make the trial court aware of the complaint, unless the specific grounds were apparent
from the context"). Moreover, although Rogers's counsel objected to the City's failure to
produce the affidavits in response to Rogers's request for disclosure, he did not object
specifically that McElhaney's affidavit was inadmissible because she was not disclosed as
an expert. We conclude that Rogers has waived this argument. See Tex. R. App. P.
33.1(a).

 Rogers further argues that the trial court erred in considering either affidavit because
they contained inadmissible hearsay. However, affidavit testimony is sufficient to serve as
proof that attorney's fees are reasonable and necessary. Tex. Civ. Prac. & Rem. Code
Ann. § 18.001(b) (Vernon 2008) ("Unless a controverting affidavit is filed as provided by
this section, an affidavit that the amount a person charged for a service was reasonable
at the time and place that the service was provided and that the service was necessary is
sufficient evidence to support a finding of fact by judge or jury that the amount charged was
reasonable or that the service was necessary."). (7) Rogers's hearsay argument is without
merit because he never filed a controverting affidavit. See id.

 We conclude that the City's affidavits constituted sufficient evidence to support the
trial court's award of trial and appellate attorney's fees to the City. We further conclude
that the trial court did not abuse its discretion in awarding such fees. See Beaumont Bank,
806 S.W.2d at 226. Accordingly, Rogers's third, fourth, and fifth issues are overruled.

III. Conclusion

 Having overruled Rogers's five issues on appeal, we affirm the judgment of the trial
court.



 

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 21st day of August, 2008.
1. In his original petition, Rogers also sought back pay and benefits, as well as future pay and benefits,
as damages resulting from his termination. However, this is not the type of relief afforded under the Open
Meetings Act. See Tex. Gov't Code Ann. § 551.142 (Vernon 2004) (providing that "[a]n interested
person . . . may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or
threatened violation of this chapter by members of a governmental body."). Rogers later amended his petition
to seek reinstatement through injunctive or mandamus relief. See id.
2. Prior to trial, the parties agreed to separate the Open Meetings Act claims from the competing claims
for attorney's fees.
3. The Texas Supreme Court has articulated the policy underlying this statute thusly:


Our citizens are entitled to more than a result. They are entitled not only to know what
government decides but to observe how and why every decision is reached. The explicit
command of the statute is for openness at every stage of the deliberations. Accordingly, we
have demanded exact and literal compliance with the terms of this statute.


Acker v. Tex. Water Comm'n, 790 S.W.2d 299, 300 (Tex. 1990) (citing Smith County v. Thornton, 726 S.W.2d
2, 3 (Tex. 1986)).
4. The City concedes that it was required to "specifically state the position--Fire Chief--or the
individual--Appellant--whose employment is the subject of the agenda item."
5. Deputy City Attorney Kevin Pagan testified that he composed the first part of agenda item
9(E)--"Consideration and Action regarding request by Chief Rogers to meet with City Commission to discuss
the investigation conducted by the Civil Service Commission"--with the understanding that Rogers had, in
fact, requested such a meeting. It was only after he crafted this first part of the agenda item that he learned
that City Manager Perez "was going to recommend disciplinary action and likelihood [sic] recommend that he
be terminated."
6. Texas Rule of Civil Procedure 193.6(a) provides as follows:


A party who fails to make, amend, or supplement a discovery response in a timely manner
may not introduce in evidence the material or information that was not timely disclosed, or
offer the testimony of a witness (other than a named party) who was not timely identified,
unless the court finds that:


 (1) there was good cause for the failure to timely make, amend, or supplement
the discovery response; or


 (2) the failure to timely make, amend, or supplement the discovery response
will not unfairly surprise or unfairly prejudice the other parties.


Tex. R. Civ. P. 193.6(a).
7. Section 18.001(d) of the Texas Civil Practice and Remedies Code provides that "[t]he party offering
the affidavit in evidence or the party's attorney must serve a copy of the affidavit on each other party to the
case at least 30 days before the day on which evidence is first presented at the trial of the case." Tex. Civ.
Prac. & Rem. Code Ann. § 18.001(d) (Vernon 2008). The City produced its attorney's fees affidavits to Rogers
on June 21, 2006, which was more than thirty days prior to July 31, 2006, the date the affidavits were first
presented to the court.