NO.
12-06-00120-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

SAMUEL AVILA AND NILSA AVILA      §                      APPEAL
FROM THE SEVENTH

D/B/A MUNDO LATINO,

APPELLANTS

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

 

THE STATE OF TEXAS,

APPELLEE   §                      SMITH
COUNTY, TEXAS

                                                                                                                                                           


OPINION

            Samuel Avila
and Nilsa Avila, doing business as Mundo Latino, appeal from a judgment and permanent
injunction entered after a jury trial in a case brought by the State of Texas
pursuant to the Texas Deceptive Trade Practices-Consumer Protection Act
(DTPA).  In nine issues, the Avilas
complain of the sufficiency of the evidence, rulings on the admissibility of
certain evidence, charge error, and the breadth of the injunction.  Because the injunction is overbroad, we
modify the permanent injunction to delete one paragraph.  As modified, we affirm the trial court’s
judgment and permanent injunction.

 

Background

            Samuel
Avila and his wife, Nilsa, operated a business called Mundo Latino in Tyler,
Texas.  They assisted Spanish speaking
individuals with immigration matters and federal income taxes.  They also took passport and immigration
photos, translated documents, and at a time when permitted by law, took
fingerprints.

            The
Office of the Attorney General of the State of Texas filed a petition against
the Avilas alleging they violated the DTPA. 
The State alleged that the Avilas counseled consumers on immigration
matters without legal authorization or qualification.  In the process, the State alleged, the Avilas
engaged in false, misleading, and deceptive acts and practices because they do
not possess the certification or qualifications necessary to counsel people
regarding their rights under United States immigration  laws or to represent them in immigration
matters.  The State further alleged that
the Avilas violated the Texas Government Code by stating or implying that
Samuel Avila, a notary public, is an attorney licensed to practice law and by
soliciting or accepting compensation for preparing documents for or otherwise
representing the interests of another in proceedings relating to immigration to
the United States.

            The
trial court entered a temporary restraining order and asset freeze and, after a
hearing, a temporary agreed injunction. 
The case was tried before a jury that found Samuel and Nilsa Avila
interviewed consumers or filled out immigration forms for consumers or advised
consumers as to whether they were qualified to file petitions and applications,
or determined whether immigration forms should be filed for consumers, when
neither was licensed to practice law; accepted compensation to prepare
documents for and to represent consumers regarding immigration to the United
States, United States citizenship, or related matters when not licensed to
practice law, not law students, or working for a nonprofit organization
accredited by the Board of Immigration Appeals; engaged in false, misleading,
or deceptive acts or practices in the conduct of trade or commerce; and that
both, while notary publics, solicited or accepted compensation to prepare
documents for or otherwise represent the interest of another in a proceeding
relating to immigration to the United States, United States citizenship, or
related maters.  In accordance with the
jury’s findings, the trial court ordered Samuel Avila and Nilsa Avila each to
pay $60,000.00 for restitution and $100,000.00 for penalties. Together they are
to pay $28,500.00 in attorneys’ fees. 
The trial court permanently enjoined the Avilas from engaging in
specified acts regarding their business and other acts that constitute the
provision of immigration services until they comply with federal law to become
authorized to provide such services.

 

Admissibility
of Evidence

            The
Avilas contend, in their first issue, that the trial court erred in admitting
State’s Exhibit 3 because it is hearsay and the State did not lay the
proper predicate under the business records exception to the hearsay rule.  Further, they argue that, although Exhibit 3
is a summary of business records, the State did not offer proof that the actual
business records had been made available to them for any period of time to
afford inspection, and therefore the exhibit was not admissible for failure to
comply with Rule of Civil Procedure 1006.

            The
admission and exclusion of evidence is committed to the trial court’s sound
discretion.  Nat’l Liab. & Fire
Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000).  On appeal, we review a trial court’s
evidentiary decisions by an abuse of discretion standard.  Id. at 527-28.  The determination of abuse of discretion
turns on whether the lower court acted without reference to any guiding rules
and principles.  Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  Hearsay statements are generally
inadmissible, but there are a number of exceptions to this general rule.  See Tex.
R. Evid. 802, 803.  One such
exception is the business records exception, which allows for the admission of
records of regularly conducted business activities.  Tex.
R. Evid. 803(6).  Records that
would otherwise be hearsay are admissible under Rule 803(6) if the following
four requirements are met: 1) the records were kept in the course of a
regularly conducted business activity, 2) it was the regular practice of that
business activity to make the records, 3) the records were made at or near the
time of the event being recorded, and 4) the person making the records or submitting
the information had personal knowledge of the events being recorded.  West v. State, 124 S.W.3d 732,
735 (Tex. App.–Houston [1st Dist.] 2003, pet. ref’d).  

            Dennis
Janda, an intelligence research specialist with the Citizenship and Immigration
Services Branch of the United States Department of Homeland Security, testified
for the State.  He is a custodian of the
records for Citizenship and Immigration Services.  Janda explained that a G-28 is a form
submitted by or on behalf of individuals seeking immigration benefits.  All information on every G-28 form submitted
is entered into a computer within twenty-four hours of its receipt by his
department.  Janda testified that State’s
Exhibit 3 is a summary of the more than 2,180 G-28 forms filed by Samuel Avila.  He testified that Exhibit 3 is a business
record made in the ordinary course of business at Citizenship and Immigration
Services, made at or near the time his department received the G-28 forms, by a
person with knowledge of the events being recorded.  

            Although
Exhibit 3 is a summary of underlying business records, it is itself a business
record entitled to be treated as other business records, making Rule 1006
inapplicable here.  See McAllen
State Bank v. Linbeck Constr. Corp., 695 S.W.2d 10, 16 (Tex. App.–Corpus
Christi 1985, writ ref’d n.r.e.).  Rule
803(6) does not require any additional predicate to be laid for the admission
of computer generated records.  Huff
v. State, 897 S.W.2d 829, 840 n.10 (Tex. App.–Dallas 1995, pet. ref’d).  Janda’s testimony established the necessary
predicate required by Rule 803(6).  We
hold that Exhibit 3 met the business records exception to the hearsay rule and
the trial court did not abuse its discretion in admitting it.  We overrule the Avilas’ first issue.

            In
their second issue, the Avilas contend the trial court erred when it prevented
them from putting on any evidence to assist the jury in assessing damages or
mitigating damages and civil penalties. Asserting that the State’s position
created a form of strict liability, they argue that the jury should have heard
evidence about whether any consumer was harmed or suffered any damage or
whether the Avilas actually committed deceptive trade practices as defined in
the charge.

            First,
the Avilas contend the trial court erred when it refused to admit Defendants’
Exhibit 5, a document signed by Maribel Tavera, a previous client of the
Avilas who testified for the State.  They
argue that the exhibit was admissible for purposes of impeachment.  However, the record shows that the trial
court’s refusal to let the Avilas offer Exhibit 5 was a sanction for their
failure to produce the document in discovery. 
Rule of Civil Procedure 215.2(b)(4) authorizes the trial court to forbid
a party from introducing designated matters in evidence.  Tex.
R. Civ. P. 215.2(b)(4). 
Therefore, the trial court was within its discretion in refusing to
admit Defendants’ Exhibit 5.

            Next,
the Avilas assert that the trial court erred in refusing to allow Tavera to
answer when asked if she obtained her residency status.  The court sustained the State’s relevancy
objection.  The Avilas argue that the
answer is admissible to show that, since they helped Tavera obtain her
citizenship, the violation, if any, is not serious.  The State responds by asserting that the
focus under the DTPA is the defendant’s conduct, not the result of his
conduct.  The State argues that the trier
of fact is to consider the gravity of the prohibited act to determine the
seriousness of the violation, not the gravity of the harm done by engaging in
the act. 

            Section
17.47(g) of the DTPA provides that, in determining the amount of penalty to
impose, the trier of fact is to consider the seriousness of the violation,
including the nature, circumstances, extent, and gravity of the prohibited
act.  Tex.
Bus. & Com. Code Ann. § 17.47(g) (Vernon Supp. 2007).  If the meaning of statutory language is
unambiguous, we adopt the interpretation supported by the plain meaning of the
provision’s words and terms.  Meritor
Auto., Inc. v. Ruan Leasing Co., 44 S.W.3d 86, 89 (Tex. 2001).  The plain language of the statute lists
factors to be considered in assessing a fine. 
The legislature could have included results of the defendant’s actions
in the list had it so chosen.  We agree
with the trial court’s determination that testimony about the results of the
Avilas’ actions is irrelevant under the DTPA and therefore inadmissible.

            Finally,
in issue two, the Avilas assert that the trial court erred by not allowing
certain testimony of Fernando Dubove.  The State objected asserting that the
testimony violated the motion in limine that prohibited evidence of the results
of the Avilas’ actions, that it is hearsay, is not relevant, and that the
evidence is cumulative.  

            The
Avilas offered a bill of exception to make a record of the testimony they
wanted before the jury.  In the bill,
Dubove explained that, in his opinion, the violations were serious because
Avila “did a lot of them.”  He said the
gravity of the prohibited act is dependent upon the consequences.  He stated that he had reviewed the cases done
by the Avilas and had not seen one “where someone was lied to by Mr. Avila
because he misrepresented he was an attorney or an accredited rep.” or where
applications were fraudulently prepared, or where applications were filed
prematurely resulting in the client being deported.  He testified that Avila has not caused any
confusion or misunderstanding as to certification of his services.  Avila has been doing this for a long time and
people hear about him through friends and relatives who have been satisfied
with his work.  In his opinion, Avila
never told anyone that he was a lawyer or an accredited representative.  He stated that Avila’s work is competent and
Avila did not pretend to be an accredited representative.  Dubove explained that while Avila is not
authorized to perform immigration services, he is qualified and does good
work.  In Dubove’s opinion, there was no
harm or gravity to Avila’s performing the services he did without working for a
nonprofit organization.

            As
explained above, any testimony going to the gravity of the harm done by
engaging in the prohibited act is irrelevant and inadmissible.  Testimony about what clients thought and what
Avila’s case records indicate is inadmissible hearsay.

            Furthermore,
on direct examination before the jury, Dubove covered the same subject
matter.  He explained that he hired Avila
to work for him because the people who sought out Avila went to him for a
reason.  They trusted him and relied on
his work product.  The court sustained
the State’s hearsay objection as to “the last portion of the answer” but stated
that the “first portion will stay in the record.”  However, the State did not ask for any
portion of the answer to be stricken or for the jury to be instructed to
disregard.  Dubove was asked his opinion
of the seriousness of Avila’s violations and the gravity of his prohibited acts
or practices.  Dubove explained that he
had no doubt that Avila had engaged in the unauthorized practice of law but
said he had not found any harm.  The
State objected, and the court sustained “the objection to the last part of his
answer” but explained that “the first part still stands.”  Again, there was no motion to strike or
request for a jury instruction.  Dubove
explained that serious consequences may occur when applications are
inappropriately filed or fraudulently prepared. 
He said he had not seen anything like that in Avila’s cases.  The State’s objection was sustained as to the
“last part” of Dubove’s statements.  Again,
there was no motion to strike or request for a jury instruction.  Counsel for Avila asked, “So, Mr. Dubove,
would it be your opinion that the seriousness of the violation and the gravity
of the prohibited act or practice depends upon the results of the acts or
practices, not just that they were performed?” 
Dubove’s response was, “Exactly.” 
The State objected and a bench conference ensued.  After a discussion of the parameters of
acceptable questioning, the court sustained the objection and allowed counsel
to reask the question.  Dubove’s previous
answer was not stricken and no jury instruction was given.  Dubove then answered “no” when asked if he
believed that the act of an unauthorized person performing immigration services
is in itself serious and grave.

            The
testimony in the bill of exception included hearsay, irrelevant, and cumulative
evidence.  Therefore, the trial court did
not abuse its discretion in excluding the testimony in the bill of exception.  See Allen, 15 S.W.3d at
527-28.  We overrule the Avilas’ second
issue.

 

Charge Error

            In
their fourth issue, the Avilas assert that the trial court erred in submitting
Questions 1 and 2 to the jury because they were immaterial and constituted a
comment on the weight of the evidence.  They
argue that these questions, which concern the unlawful practice of law, implied
that such activities were deceptive trade practices although such acts have not
been declared unlawful by the DTPA.  They
further complain that the jury was instructed to not answer Questions 3 and 4
unless they answered in the affirmative to either Question 1 or 2.  Because Questions 3 and 4 inquired as to
whether the Avilas engaged in practices declared unlawful under the DTPA, they
argue, the charge had the effect of telling the jury that the acts described in
Questions 1 and 2 were false, misleading, or deceptive acts or practices in the
conduct of trade or commerce and the only acts of the Avilas that were such.

            A
party must make a specific objection to the submission of a jury question
believed to be improper if that party wishes to preserve error for appellate
review.  See Tex. R. Civ. P. 274.  The Avilas objected to Questions 1 and 2
complaining that they are duplicates and that, because there is no evidence
that they performed the acts alleged in those questions, the evidence does not
support submission of Questions 1 and 2. 
Their complaint on appeal does not comport with the objections to
Questions 1 and 2 made at trial. 
Therefore, their complaint on appeal has been waived.  See Gutierrez v. County of Zapata,
951 S.W.2d 831, 844 (Tex. App.–San Antonio 1997, no writ).  We overrule the Avilas’ fourth issue.

 

Sufficiency
of the Evidence

            In
their third issue, the Avilas contend there is no evidence that Nilsa committed
any act of engaging in false, misleading, or deceptive acts or practices in the
conduct of trade or commerce.  They argue
that the State relied on the alleged partnership with her husband to support
the judgment against Nilsa and that it offered no evidence that Nilsa,
personally or individually, performed any unlawful acts or practices.  They argue that the only evidence of a
partnership was the assumed name certificate for Mundo Latino, which had both
Samuel and Nilsa’s names on it and which they contend is insufficient to prove
the existence of a partnership.

            In
their fifth issue, the Avilas assert the trial court erred in submitting
Question 3 to the jury and entering judgment on the jury’s answer to Question 3
because there was no evidence that either of them engaged in any false,
misleading, or deceptive act or practice in the conduct of trade or commerce as
defined in Question 3.  In that question,
the jurors were advised that “false, misleading, or deceptive act or practice”
meant a number of different acts, including an act or series of acts that have
the tendency to deceive an average ordinary citizen; causing confusion or
misunderstanding as to affiliation, association, or certification by another;
representing that a person has a status, affiliation or connection which he
does not have; representing that services have approval characteristics, uses,
or benefits which they do not have; or representing that an agreement confers
or involves rights, remedies, or obligations which it does not have or involve,
or which are prohibited by law.

            In
their sixth issue, the Avilas assert that there is no evidence that Samuel or
Nilsa Avila, as notary publics, solicited or accepted compensation to prepare
documents for or otherwise represented the interest of another in a proceeding
relating to immigration to the United States, United States citizenship, or
related matters.  They argue that the
State did not prove what dates they were commissioned notaries and there is no
evidence that any solicitation or acceptance of compensation, preparation, or
representation was done while Samuel Avila was a notary public.

Evidence Presented

            In
his deposition taken shortly before trial, Samuel Avila said he began Mundo
Latino in 1998 or 1999.  He has also
called his business East Texas Immigration Counseling Services.  He admitted that he is not an attorney and
his business is not a nonprofit organization. 
He stated that he advertised his income tax service only once and does
not advertise immigration services. 
Avila explained that he accepted compensation to fill out immigration
forms, but denied giving advice.  He
charged $150.00, $300.00, or $750.00 depending on which forms were
necessary.  He said he had provided
immigration services for over a thousand people.  

            Richard
Fischer, an attorney who practices immigration law, explained that in order to
qualify to do immigration services, an individual must either be a licensed
attorney or be an accredited representative, authorized by the Board of
Immigration Appeals.  Accredited
representatives can only be employed by nonprofit organizations.  As an immigration attorney, he interviews
clients and advises them about what must be done to “get legal.”  He then picks out the appropriate forms and
prepares them.  He explained that “problem/forms/result”
is the heart of immigration law practice. 
Fischer opined that Samuel Avila is engaged in the same kind of business
that he is, and Avila is making mistakes.

            Fischer
testified that between 200 and 1,000 people have come to him who were
previously provided services by Samuel Avila. 
He stated that, in addition to filing fees, Avila charged $600.00 for an
application for permanent residence, $150.00 or $200.00 for an application for
naturalization, and $100.00 or $150.00 for the form that is filed to get a new
copy of an old document.  The State
offered into evidence a copy of a settlement agreement between Blanca and David
Perez and Samuel Avila, dated August 17, 2001. 
Fischer explained that the Perezes came to him after Avila had filed
forms on their behalf in which he had failed to disclose a prior marriage of
Blanca.  The parties agreed to a monetary
settlement.  Additionally, Avila
acknowledged that he is not authorized to receive money for advising, filling
out forms, or representing people in immigration matters and promised not to
give advice, fill out forms, or represent people in immigration matters “anymore”
unless and until he is lawfully authorized to do so by the Board of Immigration
Appeals.

            Dennis
Janda, the intelligence research specialist with Citizenship and Immigration
Services, explained that the G-28 form, which is entitled “Notice of Entry of
Appearance as Attorney or Representative,” is submitted by or on behalf of
individuals seeking immigration benefits. 
He testified that Samuel Avila filed in excess of 2,180 G-28s under
several different business names and different titles for himself including “Counselor
at Law” and “Law Offices of Samuel Avila.” 
He explained that the form indicates to his agency that the individual
is represented by a law firm or authorized individual and that the person
filing it is a licensed attorney or a nonprofit organization.  Janda testified that neither Mundo Latino nor
East Texas Immigration Counseling Services, names under which the Avilas have
done business, are nonprofit organizations recognized by the Board of
Immigration Appeals.  The record contains
seven G-28s filed by Samuel Avila with dates ranging from January 1999 to
February 2004.

            On
four consecutive Saturday mornings in early 2005, Samuel Avila participated via
telephone in a radio program aimed at the local Hispanic community.  The State presented the transcripts of these
programs, which originally aired in Spanish, as well as the English
translations.[1]  During the
course of the programs, Avila told the audience that it would be best if people
with criminal records did not apply because they would be subject to deportation.  He discussed various issues including the
importance of becoming a citizen, the requirements for becoming a citizen, and
dual citizenship.  He also gave advice to
Salvadorans who needed to renew their temporary status to “legally stabilize”
themselves.  He urged his clients to come
back so he could help them fill out the applications.  He also explained that to get a work permit,
they needed to fill out a form I-765.  He
explained that “law 245 I” allows applicants who entered the United States
illegally to pay a penalty and receive a visa in the local immigration office
where they live.  He went on to explain
in further detail how some of the immigration laws work.  Avila also explained, for those who do not
have a Social Security number, how to obtain a tax identification number.  He explained that people can get a tax
identification number to fill out their income tax and the Internal Revenue
Service cannot give the tax identification number to “immigration” to look for
illegals.  He stated that he has been
doing immigration and income tax work in East Texas since 1987.  He said “we” are here to serve the Hispanic
community by answering any questions they might have regarding income tax and
with relation to immigration.

            Research
by Amy Russom, an investigator for the Attorney General, revealed that neither
the Avilas nor Mundo Latino are accredited by the Board of Immigration
Appeals.  She did the research on March
24, 2005 and December 2, 2005.  She also
determined that neither Samuel Avila nor Nilsa Avila is licensed to practice
law in the State of Texas, but both were, at the time of trial, commissioned
notaries in Texas.  Russom testified that
the Attorney General’s office had received seven complaints against the
Avilas.  In the course of its investigation,
the Attorney General’s office sent a civil investigative demand to the
Avilas.  In response, on June 22, 2004,
Samuel Avila wrote to the staff of the Attorney General’s office explaining
that his work is strictly clerical for people who are not capable of filing
their own income tax or immigration forms. 
He said he is a notary “but only for the purpose for the convenience to
Notarized documents that are required to be Notarized.” He said he is not an
attorney and Mundo Latino is not a nonprofit agency.  

            The
record contains a copy of a document entitled “Assumed Name Records Certificate
of Ownership for Unincorporated Business or Profession.”  The business named is Mundo Latino and Samuel
Avila and Nilsa Avila are named as the owners of the business.  Both of them signed the document and it was
filed in the Smith County clerk’s office on March 28, 2000.  

            Portions
of the deposition testimony of Fernando Dubove, the Dallas immigration lawyer,
were read to the jury.  He explained that
he first met Samuel Avila at an immigration training session in 1997 or
1998.  Avila recently called him to get
help with Mundo Latino’s cases.  In
response, Dubove set up a satellite office in Tyler.  Dubove explained that, if you do not have a
law license, the only way to provide immigration services is to work for an
accredited agency and become an accredited representative.  It has to be a nonprofit and you have to get
accredited by the Board of Immigration Appeals. 
The only people who should be filling out G-28s are attorneys and people
who work under an accredited representative or an accredited agency.  He stated that Samuel and Nilsa Avila are not
qualified to file a G-28.  Dubove reviewed
the files that were transferred to him and saw that the Avilas filled out
applications and signed G-28s.  He
explained that the Avilas have called themselves immigration consultants on
documents they filed, which is a nebulous title that does not mean anything.  It does not fall under any of the legal
exceptions that would allow someone to do immigration law.  While they can call themselves consultants,
they are not allowed to fill out forms or give legal opinions.  Dubove concluded that Samuel and Nilsa Avila
were engaged in the unauthorized practice of law.

            The
State called Samuel Avila to testify.  He
admitted helping thirty family members and some people at church whom he did
not charge.  He said that no one he had
helped had complained to him and as far as he knew they got their visas and
kept sending him clients.  Plaintiff’s
Exhibit 16 is a computer printout produced by Avila entitled “Clients
Priority List.”  He admitted that he got
the list off his computer but denied that the 1,934 people named were his
clients.  He said he put the names in his
system, but did not charge for doing so. 
He said he put the names in his system so those people could call him
and ask “if the bulletin visa was current.” 
He denied contacting immigration for those applicants.  

            Plaintiff’s
Exhibit 17 is a letter, the body of which is written in Spanish.  At the top of the letter are the words “Immigration
Counseling Services of East Texas.”[2] 
It is signed by Samuel Avila.  The
words “Counselor at Law,” in English, appear below the signature line.  From the witness stand at trial, Samuel Avila
admitted it looked like his signature, but said that did not mean he wrote the
letter.  He said the signature could have
been forged and refused to admit that he wrote the letter.  On cross examination, he said he did not know
where the document came from and he contested its validity.

            Plaintiff’s
Exhibit 18 is a letter to the “interviewing immigration officer or border
patrol agent of the United States.”  It
is on Immigration Counseling Service of East Texas letterhead, dated March 21,
1998.  The body of the letter contains
the following statements:

 

we [sic] represent
the above captioned person in Immigration proceedings under applicable U.S.
laws.  he/she [sic] should submit to an
interview or make a Question and Answer Statement to an Immigration Officer
outside of my presence.  However, in no
way should this authorization be construed as allowing this client to execute a
request for voluntary departure under safeguards without contacting this
office.  This office does not otherwise
acquiesce in any way waiver of right to counsel made by a detained client who
has not first contacted our office.

 

 

The letter is signed by Samuel
Avila.  The title “Immigration Paralegal”
appears under the signature.

            Plaintiff’s
Exhibit 19 is a letter on Mundo Latino letterhead, dated May 29, 2000.  The text of the letter is identical to
Exhibit 18.  It is signed by Samuel
Avila, but there is no title beneath the name. 
Plaintiff’s Exhibit 20 is a letter on East Texas Immigration Counseling
Service letterhead, dated August 27, 1999. 
Again, the text of the letter is the same as the others.  It is signed by Samuel Avila with the title “Immigration
Counselor” below the signature.

            On
cross examination, Avila explained that a priority list is produced once a
month by the federal government and it tells the applicants whether their visas
are available.  The list is available on
the internet and by calling the office of Immigration and Naturalization
Service.  He explained that 80% of Mundo
Latino’s income is from doing income taxes. 
He rephrased to say that 90% of his income is from things other than
filling out immigration forms.  They also
take passport and immigration photos and translate documents.  He said that if a client wants to file an
I-130, he reads the instructions to them. 
He does not give them legal advice as to what they ought to answer.  Since April 16, 2005, he has been employed by
Fernando Dubove as office manager in Dubove’s Tyler office.  Dubove sees the majority of the people Avila
assisted in the past.  Avila denied
telling anyone he was an attorney.  

            Maribel
Tavera testified, explaining that she hired the Avilas to help arrange for a
visa or residency for immigration. 
Samuel Avila told her he was a lawyer and Nilsa Avila assisted him.  She has been to their place of business about
seven times and Nilsa assisted each time. 
Samuel Avila had assisted her father with immigration services.  She saw her father pay the Avilas and he paid
a different amount every time he went. 
She hired the Avilas to help her with immigration services because they
had already helped many of her friends and relatives.  She explained that immigration services
included the attorney’s help in filling out applications and other documents
for residency, citizenship, and work permits, and getting photos for the
applications.  The first time she went to
the Avilas’ office was to hire them to get her residency status.  They told her to first apply for the permit,
because it would arrive much quicker, and then she could apply for
residency.  She said they filled out the
forms for her.  The last time she went to
their office was to get copies of her paperwork.  During that visit, Samuel Avila threatened to
countersue her for testifying against him in court.

            On
cross examination, Tavera said that, although she might have signed a document
stating that she understood he was not an attorney, Samuel Avila told her he
was an immigration attorney.  She did not
remember such a document.  Additionally,
he had business cards that said he was an immigration attorney.  She testified that Samuel Avila prepared the
documents and told her where to send them.

            On
redirect, Tavera said Samuel Avila put documents in front of her and told her
to sign.  She did because she trusted
him. But if she had known the Avilas were not certified or licensed to provide
immigration services, she would not have hired them.

            Tavera
testified that Samuel Avila translated a document from Spanish, took
photographs, and prepared a biographical document, one income tax return, the
application for the permit, and the application for residency.  Samuel Avila selected the immigration
documents to be filled out but sometimes she filled out forms herself.  She paid a total of $2,000.00, half of which
was for immigration services for her. 
However, Avila would not give her a receipt.  She paid the government filing fees with
money orders, but paid the Avilas with cash.

            Fernando
Dubove testified for the defense.  He
explained that, to be authorized to practice immigration law, one must be a
licensed attorney or a representative accredited by the Board of Immigration
Appeals and work for a nonprofit.  He met
Samuel Avila eight or nine years ago and hired him in March 2005 to do
immigration law.  Dubove testified that
Avila committed the unauthorized practice of law before he worked for
Dubove.  In his opinion, if someone was
hurt because of Avila’s actions, it could be a serious mistake, but he had not
found any harm.  Dubove explained that
just not being authorized in itself is not serious and grave; seriousness and
gravity of violations depends on the results.

Applicable Law

            If
an appellant is attacking the legal sufficiency of an adverse finding on an
issue on which he did not have the burden of proof, the appellant must
demonstrate on appeal that there is no evidence to support the adverse
finding.  See Croucher v. Croucher,
660 S.W.2d 55, 58 (Tex. 1983). The reviewing court views the evidence in the
light most favorable to the verdict, indulging every reasonable inference that
would support it.  City of Keller
v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  The reviewing court must credit evidence that
supports the verdict if a reasonable fact finder could and disregard contrary
evidence unless a reasonable fact finder could not.  Id. at 827.  We must determine whether the evidence at
trial would enable a reasonable and fair minded person to find the facts at
issue.  Id.  If more than a scintilla of evidence exists
to support the finding, the legal sufficiency challenge fails.  See Uniroyal Goodrich Tire Co.
v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998).  The fact finder is the sole judge of the
credibility of the witnesses and the weight to give their testimony.  City of Keller, 168 S.W.3d at
819.

            The
Supreme Court of Texas has held that providing immigration services in the
absence of a law license constitutes the unauthorized practice of law.  Unauthorized Practice Comm. v. Cortez,
692 S.W.2d 47, 50-51 (Tex. 1985).  State
law provides that a notary public cannot state or imply that he is an attorney
licensed to practice law in this state.  Tex. Gov’t Code Ann. § 406.017(a)(1)
(Vernon 2005).  Further, notary publics
are prohibited from soliciting or accepting compensation for preparing
documents or otherwise representing the interests of another in any judicial or
administrative proceeding, including immigration proceedings.  Tex.
Gov’t Code Ann. § 406.017(a)(2) (Vernon 2005).  Failure to comply with Section 406.017 is a
deceptive trade practice actionable under the DTPA.  Tex.
Gov’t Code Ann. § 406.017(f) (Vernon 2005).  Further, the unauthorized practice of law can
be a deceptive trade practice.  See Thomas
v. State, 226 S.W.3d 697, 703-04 (Tex. App.–Corpus Christi 2007, pet.
dism’d); Francorp, Inc. v. Siebert, 211 F. Supp. 2d 1051, 1054
(N.D. Ill. 2002); In re Samuels, 176 B.R. 616, 626 (Bankr. M.D.
Fla. 1994).

Discussion

            The
State presented a copy of the assumed name certificate filed by the Avilas in
the Smith County clerk’s office.  This
certificate, which names Samuel Avila and Nilsa Avila as owners of Mundo
Latino, is presumptive evidence of the facts contained therein.  Tex.
Bus. & Com. Code Ann. § 36.15 (Vernon 2002) (repealed by Act
of May 15, 2007, 80th Leg., R.S., ch. 885, § 2.47(a)(1), 2007 Tex. Gen.
Laws 1908, 2085, effective April 1, 2009).

            Samuel
Avila accepted compensation to fill out immigration forms and provided immigration
services to over a thousand people. 
Fischer, the immigration attorney, said that Avila is engaged in the
same kind of business that Fischer is. 
The settlement agreement Avila signed in the suit with the Perezes
implied that he had been practicing immigration law.  Samuel Avila filed over 2,000 G-28s
indicating that he represented the individuals seeking immigration benefits, at
times signing as an attorney.  During the
course of the radio programs, Avila explained some of the immigration laws and
gave advice regarding those laws.  Dubove
also testified that both Samuel and Nilsa Avila had filled out applications and
signed G-28s, which they are not qualified to file.  He concluded that they had been engaged in
the unauthorized practice of law before Samuel Avila began working for
Dubove.  Exhibit 17 is signed by Samuel
Avila, “Counselor at Law.”  In Exhibits
18, 19, and 20, Samuel Avila said he represented the client in immigration
proceedings.

            Maribel
Tavera testified that she hired Samuel and Nilsa Avila to help with immigration
services.  Also, the Avilas had helped
her friends and relatives.  She testified
that Samuel Avila told her he was a lawyer and Nilsa Avila assisted him.  They advised her as to the best course of
action, selected the appropriate immigration forms, and filled out forms for
her, for a fee.  She testified that if
she had known Samuel and Nilsa Avila were not certified or licensed to provide
immigration services, she would not have hired them.

            It
is undisputed that neither Samuel Avila nor Nilsa Avila is an attorney and that
neither they nor Mundo Latino is accredited by the Board of Immigration
Appeals.  At the time of trial, they were
both notaries.  In a letter dated June
22, 2004, Samuel Avila stated that he is a notary.  Further, his notary stamp appears on Exhibit
18, which is dated March 21, 1998.

            The
record contains more than a scintilla of evidence that both Samuel and Nilsa
engaged in the unauthorized practice of law and violated the state law
governing notary publics.  See Tex. Gov’t Code Ann. § 406.017(a); Cortez,
692 S.W.2d at 50-51.  Therefore, there is
sufficient evidence to support the jury’s findings that both Samuel and Nilsa
Avila engaged in false, misleading, or deceptive acts or practices in the
conduct of trade or commerce.  See
Tex. Gov’t Code Ann. §
406.017(f); Thomas, 226 S.W.3d at 703-04.  We overrule the Avilas’ third, fifth, and
sixth issues.

 

Damages

            In
their seventh issue, the Avilas contend the trial court erred in ordering them
to pay $60,000.00 each to restore sums taken by means of unlawful acts or
practices.  They argue that there is no
evidence of the specific information required to support these awards.  They contend the State was required to
present evidence of identifiable persons, how much each person paid the Avilas,
and that these sums were paid in the two years before the State filed its
petition.  They further assert that the
State is not an identifiable person for which the statute authorizes restitution.

            The
statute provides as follows:

 

The court may make
such additional orders or judgments as are necessary to compensate identifiable
persons for actual damages or to restore money or property, real or personal,
which may have been acquired by means of any unlawful act or practice.  Damages may not include any damages incurred
beyond a point two years prior to the institution of the action by the consumer
protection division.

 

 

Tex. Bus.
& Com. Code Ann. §
17.47(d) (Vernon Supp. 2007).

            In
Question 5, the jury was asked:

 

What sum of money,
if any, if paid now in cash, is necessary to restore money acquired from
identifiable persons by means of unlawful acts or practices committed by
Defendants?

 

You are instructed
that an award to restore money acquired by means of any unlawful act or
practice, if any, may only be made to compensate identifiable persons for money
acquired on or after March 31, 2003.

 

 

The jury answered $60,000.00 for
Samuel Avila and $60,000.00 for Nilsa Avila.

            Actions
filed by the Attorney General’s office pursuant to Section 17.47 are de facto
class actions.  See Thomas,
226 S.W.3d at 707.  Members of the class
may be identified by Exhibits 2 and 3. 
State’s Exhibit 2 includes seven G-28s filed on behalf of petitioners in
2004 and 1999.  State’s Exhibit 3, which
summarizes 2,181 documents filed by the Avilas, indicates the year each was
filed, including 2005 and going back more than ten years.  Samuel Avila testified that the minimum he
charged was $150.00 and the evidence showed that he frequently charged $300.00
or $750.00 per document filed.  Tavera
said she paid $1,000.00 for immigration services.  Approximately 374 documents were filed in
2004 and 2005. Thirty-five documents were filed in early 2003.  Based on Janda’s testimony explaining the
makeup of the receipt numbers listed on Exhibit 3, it is possible to determine
which documents were filed after March 31, 2003.  Due to the manner in which the evidence was
presented, it is not possible to determine how much the consumers named in
Exhibit 3 paid to the Avilas.  The
jury was aware of the amounts Avila charged generally.  If, for example, the jury based its decision
on each of the 409 consumers who filed in the two years immediately prior to
the suit having paid $750.00, its award would be well within the evidence.  If, however, the jury based its award on the
evidence that each of the 409 paid $150.00, the total would be less than the
$120,000.00 awarded.  But we need not confine
our review to these 409 consumers.

            The
Avilas requested the language in Question 5 limiting the restitution award to
the two years before suit was filed.  In
the Thomas decision, the Corpus Christi court determined that the
two year statute of limitation in Section 17.47(d) does not apply to
restitution.  Id. at
710.  We agree with that
determination.  To allow the Avilas to
prevail in their argument that the restitution awards cannot stand because the
evidence does not prove the consumers paid them $120,000.00 between March 31,
2003 and March 30, 2005 would be tantamount to allowing the Avilas to profit
from invited error.  See Bales v.
Delhi-Taylor Oil Corp., 362 S.W.2d 388, 391 (Tex. Civ. App.–San Antonio
1962, writ ref’d n.r.e.) (Party cannot predicate error on instructions given at
his own request.).  When allowed to consider
all of the evidence, that there were at least 2,181 consumers who each paid at
least $150.00 to the Avilas, not just evidence of payments during the two years
before the suit was filed, there is more than enough evidence to support the
jury’s award even if it is based on the smallest amount charged by Avila.  We overrule the Avilas’ seventh issue.

            In
their eighth issue, the Avilas contend the trial court erred in not instructing
the jury to restrict its assessment of civil penalties to false, misleading, or
deceptive acts or practices committed for the two years immediately preceding
the institution of the State’s suit. 
They argue that Section 17.565 of the DTPA provides for a two year
limitations period and the statute does not make an exception for suits brought
by the Attorney General’s office.

            A
party complaining of the judgment on the basis that an instruction was not
given to the jury must have presented a written request that the omitted
instruction be included in the charge and tendered the proposed instruction in
substantially correct wording.  Tex. R. Civ. P. 278.  Here, the Avilas did not object to the charge
on the basis that a limiting instruction was needed in Question 6.  Nor did they tender a proposed instruction.  Therefore, they have waived this complaint.

            Furthermore,
to allow the State to enforce its laws to protect the general public, the State
in its sovereign capacity is not subject to the defense of limitations.  State v. Durham, 860 S.W.2d 63,
67 (Tex. 1993); Thomas, 226 S.W.3d at 710.  This exemption applies to actions brought for
the use and benefit of the state.  McNutt
v. Cox, 133 Tex. 409, 411, 129 S.W.2d 626, 627-28 (1939).  The attorney general is authorized to bring
suit under the DTPA in the public interest. 
See Tex. Bus. & Com.
Code Ann. § 17.47(a) (Vernon Supp. 2007).  The DTPA also makes it clear that the
consumer protection division of the attorney general’s office acts in the name
of the state and does not represent persons to whom the consumer protection
division requests that the court award relief. 
Tex. Bus. & Com. Code Ann.
§ 17.47(h) (Vernon Supp. 2007).  Since
the State did not merely assert a claim that belonged to the individual
consumers, the State does get the benefit of the exemption.  See In re T.L.K., 90 S.W.3d
833, 839-40 (Tex. App.–San Antonio 2002, no pet.) (Attorney General asserts a
right of action of the state by bringing an action for use and benefit of the
state when it seeks to enforce a child support obligation and limitations defense
is not available.); State v. Airgas-Mid South, Inc., 83 S.W.3d
890, 892 (Tex. App.–Texarkana 2002, no pet.) (Limitations defense is available
where state asserts a workers’ compensation subrogation claim because the claim
belongs to the injured employee and is not a right of action of the
state.).  Therefore, an instruction to
the jury that it should consider only evidence of violations occurring in the
two years before suit was filed would be erroneous.  See Thomas, 226 S.W.3d at
710-11.  The trial court did not err in
not giving the jury such an instruction. 
We overrule the Avilas’ eighth issue.

 

Injunction

            In
their ninth issue, the Avilas contend the trial court abused its discretion in
granting the injunction because it is overbroad, it enjoined them from acts not
declared unlawful by the DTPA, and it enjoined them from activities that are
lawful and a proper exercise of their rights. 
Further, they argue there is no evidence of irreparable injury or the
absence of an adequate remedy at law.

            The
court restrained the Avilas from transferring, concealing, destroying, or
removing from the jurisdiction of the court any written materials relating to
their business; transferring, concealing, encumbering, depleting, or removing
from the jurisdiction of the court any funds or property belonging to the
Avilas; giving advice and counsel to any person regarding United States
immigration laws or documents; representing to any person that they can
represent the interest of another in a judicial or administrative proceeding;
selecting or preparing immigration forms, applications, or legal documents to
be completed or filed on behalf of persons seeking to legalize their residency
status or to obtain lawful employment in the United States or advising persons
as to the type of document needed in such a situation; soliciting or accepting
compensation of any type for providing immigration or legal services to
consumers or to obtain relief of any kind on behalf of another from any
officer, agency, or employee of this state or the United States; stating or
implying that they are attorneys licensed to practice law or that they have an
attorney on staff to assist with immigration related matters; and advertising
immigration related services of any kind.

            The
DTPA authorizes the consumer protection division to request a permanent
injunction as a remedy.  See Tex. Bus. & Com. Code Ann. §
17.47(a).  When it is determined that a
statute is being violated, it is within the province of the district court to
restrain it.  State v. Tex. Pet
Foods, Inc., 591 S.W.2d 800, 805 (Tex. 1979).  On appeal, the review of the trial court’s
grant of a permanent injunction is usually limited to the question of whether
such action constituted an abuse of discretion. 
Isuani v. Manske-Sheffield Radiology Group P.A., 805
S.W.2d 602, 606-07 (Tex. App.–Beaumont 1991, writ denied).  The trial court abuses its discretion when it
misapplies the law to the established facts. 
Rugen v. Interactive Bus. Sys., Inc., 864 S.W.2d 548, 551
(Tex. App.–Dallas 1993, no writ).  When
an applicant relies upon a statutory source for injunctive relief, such as the
DTPA, the statute’s express language supersedes the common law injunctive
relief elements such as imminent harm or irreparable injury and lack of an
adequate remedy at law.  West v.
State, 212 S.W.3d 513, 519 (Tex. App.–Austin 2006, no pet.).  When the jury finds violations occurring and
continuing up to or near the date of the trial, the trial court may, in equity,
determine that the defendant has engaged in a settled course of conduct and may
assume that it will continue, absent clear proof to the contrary.  Tex. Pet Foods, Inc., 591
S.W.2d at 804.  








            As
explained above, the Avilas were engaged in acts that violated the DTPA and
these acts are rightfully restrained by the permanent injunction.  See Tex.
Bus. & Com. Code Ann. § 17.47(a). There need not be evidence of
irreparable injury or the absence of an adequate remedy at law.  See West, 212 S.W.3d at 519.

            We
do, however, agree with the Avilas regarding paragraph B of the
injunction.  Paragraph B restrains them
from

 

transferring,
spending, hypothecating, concealing, encumbering, depleting, modifying,
dissipating, distributing, or removing from the jurisdiction of [the trial
court] any money, stocks, bonds, assets, notes, equipment, funds, accounts
receivable, policies of insurance, trust agreements, or other property, real,
personal or mixed, wherever situated, belonging to or owned by, in possession
of, or claimed by Defendants.  

 

 

The stated purpose of the statutory
injunction is to prevent violations of the DTPA.  See Tex.
Bus. & Com. Code Ann. § 17.47(b) (Vernon Supp. 2007).  Rendering the Avilas unable to pay their
bills does not further this purpose. 
Additionally, some of their money has been earned through legitimate
business activities.  The Avilas should
have access to money made in a manner that does no harm to the public.  It is within our discretion to modify an
injunction that is overbroad.  Ctr.
for Econ. Justice v. Am. Ins. Ass’n, 39 S.W.3d 337, 347 (Tex. App.–Austin
2001, pet. denied).  Therefore, we delete
paragraph B of the injunction.  With that
modification, we overrule the Avilas’ ninth issue.

 

Conclusion

            The
Avilas raised no valid complaints regarding the admissibility of the evidence
and the trial court’s rulings thereon. 
They waived their charge error complaints.  The evidence is sufficient that Samuel and
Nilsa Avila engaged in false, misleading, or deceptive acts or practices in the
conduct of trade or commerce, and the evidence supports the jury’s restitution
awards.  Because the injunction is
overbroad, we delete paragraph B, which restrains the Avilas from doing
anything with any of their financial assets.

            As
modified, we affirm the trial court’s judgment and permanent
injunction.

                                                                                                    BRIAN HOYLE   

                                                                                                               Justice

Opinion
delivered March 31, 2008.

Panel
consisted of Griffith, J., and Hoyle, J.

Worthen,
C.J., not participating.

(PUBLISH)











[1]
The appellate record contains the English translation for only three of the
programs.





[2]
This business is sometimes referred to in the record, and therefore in this
opinion, as “Immigration Counseling Service of East Texas.”